UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHRISTIE L. ASBERRY | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:13-128-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Christie L. Asberry ("Asberry" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 8, 9] Asberry argues that the Administrative Law Judge ("ALJ") erred in reaching his conclusion that she is not entitled to a period of disability and disability insurance benefits. She seeks reversal of the ALJ's decision and an award of benefits or, in the alternative, remand of the case to the ALJ for further consideration. The Commissioner contends that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion for summary judgment and deny the relief sought by Asberry.

**I.**

On June 5, 2008, Asberry filed an application for a period of disability and Disability Insurance Benefits, alleging a disability beginning January 22, 2008. [Tr., p. 13] After the

application was denied, an administrative hearing was held on November 18, 2009.  Asberry

appeared and testified, along with impartial vocational expert ("VE") Betty L. Hale.  Asberry's

attorney, Angela Patrick, also attended the hearing.  On January 13, 2010, ALJ Willie Rose

issued a decision, finding that Asberry was not disabled under sections 216(i) and 223(d) of the

Act.  [Tr., p. 129]  Subsequently, the Appeals Council granted Asberry's request for a review of

the ALJ's decision and remanded the case for further consideration.  ALJ Roger L. Reynolds

conducted a new hearing on August 10, 2011.  The same parties appeared and testified.  [Tr.,

p. 13]  Following the second hearing, ALJ Reynolds denied Asberry's application by a decision

dated September 2, 2011.  [*Id*.]  The Appeals Council denied Asberry's second request for

review on March 20, 2013.  [Tr., p. 1]

Asberry was thirty-nine years old at the time of the ALJ's decision.  She has a high

school education and, at the time of the second hearing, was attending Bluegrass Community

College.  Based upon his review the record and consideration of the testimony presented in the

case, ALJ Reynolds determined that Asberry suffered from the following severe impairments:

> [c]hronic neck pain secondary to degenerative disc disease of the cervical spine
> with disc protrusion at C6/7; status post bilateral carpal tunnel release surgeries;
> status post ulnar nerve transposition surgeries in the right elbow; generalized
> anxiety disorder with panic features.

[Tr., p. 16] However, notwithstanding those impairments, the ALJ found that Asberry had the

residual functional capacity ("RFC") to perform light and sedentary work, with the additional

limitations of:

> lifting and carrying up to twenty pounds occasionally, ten pounds frequently, with
> sitting, standing and walking up to six hours each in an eight hour day, but within
> these parameters [] no climbing of ropes, ladders or scaffolds, occasional climbing

-2-

of stairs or ramps, occasional grasping, pinching or feeling with the right dominant hand; no use of the bilateral arms for overhead work; occasional use of the upper extremities for pushing or pulling; [Asberry] requires work in an object oriented environment with only occasional and casual interaction with the general public.

[Tr., p. 18]

Given these limitations, the ALJ found that Asberry could not perform her past relevant work. However, based on the testimony of VE Hale, he concluded that she could perform other jobs in the national economy, such as a non-hazardous security monitor, information clerk, and parking lot attendant. [Tr., p. 20] After determining that Asberry could perform other work existing in significant numbers in the national economy, ALJ Reynolds determined that she was not disabled. Thus, Asberry's application for benefits was denied.

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the

claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r*

*of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g).

## III.

Asberry asserts that the ALJ erred by: (i) failing to find that Asberry's medically determinable impairments met a listing for carpal tunnel syndrome; (ii) determining that Asberry was not totally credible; and (iii) failing to give proper weight to the relevant physicians.

### 1.     Medical Evidence[1]

Asberry argues that the ALJ did not properly consider the medical evidence, specifically alleging that the ALJ should have found that she meets the listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02 ("Listing 1.02") due to carpal tunnel syndrome.

The ALJ properly determined that Asberry's disability did not meet or equal Listing 1.02B.  That listing requires major dysfunction of a joint characterized by gross anatomical

---

[1]The ALJ adopted and incorporated by reference the medical evidence contained in Exhibits 1F through 13F.

deformity with chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint and findings on medically acceptable imaging of joint space narrowing, bony destruction, or immobility of the affected joint.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.  Subsection B requires a finding of the inability to perform fine and gross movements effectively, which refers to an extreme loss of function in both upper extremities.  *See id.*  The regulations provide examples of the types of fine and gross movements, such as the inability to "prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level."  *Id.*

Neither the medical evidence or the claimant's own daily reported activities support the argument that she meets or equals this listing as defined by § 1.02B.  *See Evans v. Sec'y of Health & Hum. Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (a claimant has the burden of demonstrating that she meets or equals a listed impairment, satisfied only when it manifests the specific findings described in the medical criteria for that listing).  Asberry points to no medical evidence in the record regarding "joint space narrowing," "bony destruction," or the immobility of a joint due to a disease, injury, or surgical procedure, termed "ankylosis."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.  Rather, consultative examiner Dr. Owen documented that the range of motion of Asberry's fingers was within normal limits.  [Tr., p. 462] X-Rays performed at the behest of Dr. Owen revealed only mild degenerative changes of Asberry's elbows.  [*Id.*] The ALJ also noted the conservative treatment of this ailment.  [Tr., p. 20]  Additionally, April 20, 2011, clinical notes from treating physician Dr. Jason Hunt indicated that Asberry had firm

grasping power in both hands, a good range of motion, and deemed Asberry "fit for work." [Tr., pp. 523-524]

Asberry's reported activities show that she is able to perform fine and gross movements, belying her assertion that she meets the listing due to her carpal tunnel syndrome. She prepares food for herself and her son daily, including taking 30 minutes to an hour for breakfast and lunch and two hours for dinner; cares for her mother, and takes care of a cat. [Tr., pp. 270, 272] She does the laundry, plays outside with her son, washes dishes, and does yard work. [*Id*.] She reported no problems with simple tasks such as bathing and dressing, and other personal care, except that at times she needs help washing and curling her hair. [Tr., p. 271] At the time of the administrative hearing, she was a full-time student at Bluegrass Community College. [Tr., p. 20] Asberry was also participating in a work-study program in the office of the Mount Sterling Health Department, where she did filing, clerical work and cleaning. [Tr., p. 618] Based on the medical evidence and her reported activities, Asberry's contention that the ALJ erred is without merit.

### 2. Credibility

Likewise, the ALJ did not err in evaluating Asberry's credibility regarding her subjective complaints of pain. The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses. And where an ALJ makes a determination regarding a claimant's credibility, he is entitled to great deference. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). The ALJ is in a unique position to "observe the claimant and judge her subjective complaints." *Id.* In fact, an ALJ is "charged with the duty of observing a witness's demeanor

and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). As a result,

an ALJ's credibility determinations are "entitled to deference on judicial review." *Boyett v.*

*Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001). However, if the ALJ "rejects a claimant's testimony

as incredible, he must clearly state his reasons for doing so." *Felisky v. Brown*, 35 F.3d 1027,

1036 (6th Cir. 1994).

The Sixth Circuit has developed a two-prong test to evaluate a claimant's subjective

allegations:

> First, we examine whether there is objective medical evidence of an underlying
> medical condition. If there is, we then examine: (1) whether objective medical
> evidence confirms the severity of the alleged pain arising from the condition; or
> (2) whether the objectively established medical condition is of such a severity that
> it can reasonably be expected to produce the alleged disabling pain.

*Walters,* 127 F.3d at 531 (6th Cir. 1997). In evaluating credibility, an ALJ considers the

objective medical evidence as well as other evidence including a claimant's daily activities,

symptoms, treatment, and medication history. 20 C.F.R. § 404.1529(c).

Here, the record demonstrates that the ALJ appropriately considered the medical

evidence, daily activities, and medication history in finding Asberry to be not totally credible.

[Tr., p. 20] Regarding Asberry's subjective complaints of pain, the ALJ found that the objective

medical evidence was not consistent with the alleged pain arising from her conditions. For

instance, Asberry testified that she takes an anti-inflammatory and a muscle relaxant, which acts

as a sleep aid — treatment that is conservative considering the alleged severity of Asberry's pain.

[Tr., p. 37] And although she claims that she is unable to work, there are repeated instances in

the record where Asberry reports that she is eager to work and where physicians deemed her fit

and able to work.  [*See, e.g.*, Tr., pp. 524, 624]  The ALJ noted that treatment for neck and left upper extremity pain was conservative.  [Tr., p. 19]  Asberry was deemed "fit for work" with restrictions, and completed physical therapy during the summer of 2011.  In 2011, her treating physician Dr. McGinnis noted that Asberry is "able to work," and she reported to another doctor that she was "eager to return to work"; accordingly, her treatment plan was tailored to that end.  [Tr., pp. 622, 624]  Particularly convincing to the ALJ was that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication of such disability by a treating doctor.  Yet a review of the record in this case reveals no such indications from a treating doctor."  [Tr., p. 20]

Asberry's own reported activities indicate that her symptoms and pain are not as severe as she now claims.  While Asberry was working in November of 2010, she was filing, moving boxes, and typing.  [Tr., p. 47]  She testified that she could lift around ten pounds, and that this did not bother her.  [Tr., p. 52]  Asberry reported that she is able to drive, do household chores and small repairs when needed, read for enjoyment, watch television, listen to music, use a computer, and bake.  [Tr., pp. 270, 272]  She is able to handle her financial responsibilities, take college classes, ride a bicycle, and attends to her own personal needs.  [*Id.*]  Socially, Asberry visits with family and fixes food for herself and others.  [Tr., p. 267]  She shops for groceries and other essentials, attends her son's sporting events and takes him to swim, fish, and play at the park, does volunteer work at her son's school and at fund raisers, and takes care of her son, her aged mother, her fourteen-year-old son, and a pet cat.  [Tr., p. 267]

The ALJ properly considered the lack of medical evidence regarding her alleged disabling pain, as well her daily activities, in determining the weight to give Asberry's complaints. Further, he gave specific reasons for not fully accepting her subjective complaints. Because the ALJ properly considered the evidence of record in discounting Asberry's subjective complaints of pain, his decision is entitled to deference upon review. *See Walters*, 127 F.3d at 531; *see also Boyett* 8 F. App'x at 434. Accordingly, the Court finds no error with the ALJ's treatment of Asberry's credibility.

### 3.      Treating Physician Rule

Finally, Asberry argues that the ALJ should have given more weight to the opinions of consultative examiner Dr. James C. Owen, M.D., and treating surgeon Dr. Einbecker, M.D. Generally, a treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. § 404.1527(c)(2); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected. The ALJ must give "good reasons" for accepting or rejecting a medical opinion. 20 C.F.R. § 404.1527(c)(2).

Dr. Einbecker, a treating hand surgeon, evaluated Asberry almost a year prior to her alleged onset of disability. Asberry alleges error with the ALJ's supposed rejection of Dr. Einbecker's limitation of "no lifting greater than 10 lb[s] frequently and, on rare occasion, up to 20 lb." [Tr., p. 390]  However, ALJ Reynolds actually incorporated this limitation into his

RFC, as he limited Asberry to "lifting and carrying up to twenty pounds occasionally, ten pounds frequently." [Tr., p. 18] Even if the RFC differs from Dr. Einbecker's limitation, it is consistent with Asberry's statement to Dr. Owen in 2008 that she can lift ten to twenty pounds. [Tr., p. 461] Accordingly, the Court finds no error with the ALJ's handling of Dr. Einbecker's statement regarding how much weight Asberry could lift.

Asberry also argues that the ALJ improperly rejected the opinion of consultative examining physician Dr. Owen. The ALJ stated that he rejected Dr. Owen's "rather extreme manipulative limitations"[2] because they are inconsistent with the findings in treating physician Dr. Jason Hunt's 2011 notes, which indicate that Asberry demonstrated a firm grasp, good range of motion, and no sensory limitations. [Tr., pp. 20, 523] Additionally, he considered the fact that no treating physicians have indicated such extreme disability, and that she has not received the type of medical treatment, nor been prescribed the type of medication, that supports the type of disability she alleges. [*Id.*] Even without this thorough consideration by ALJ Reynolds, because Dr. Owen was a consultative examining physician, his opinion is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Accordingly, the ALJ did not err in rejecting the parts of Dr. Owen's opinion that was inconsistent with the record as a whole.

Asberry attempts to explain the discrepancy between Dr. Hunt's opinions regarding her good range of motion and good grasp and Dr. Owen's extreme limitations by arguing that Dr. Hunt's opinion was limited to her arm pain based on her cervical issues and "do not address manipulative limitations such as fingering and feeling which Dr. Owen specifically addressed."

---

[2]Dr. Owen opined that Asberry's hands were useless for repetitive gripping and manipulation. [Tr., p. 461]

[Record No. 8-1, p. 7]  She argues that the two opinions do not conflict "and, in fact, have little to do with one another."  [*Id.*]

Asberry argues that the only evidence in the record addressing her ability to use her hands comes from consultative examiner Dr. Owen.  However, this assertion is incorrect.  The ALJ properly relied upon treating physician Dr. Einbecker, who addressed Asberry's ability to lift, state agency reviewing physician P. Saranga, M.D., who opined that Asberry could perform light work; and treating physician Dr. Hunt's clinical notes.  Additionally, Asberry's own statements regarding her ability to work and her daily reported activities demonstrate her ability to use her hands effectively in the manner opined by the ALJ.  Accordingly, substantial evidence supports the ALJ's finding limiting Asberry to light work.  [*See* Tr., pp. 47, 52, 390, 495, 523]  The ALJ did not err in incorporating a treating physician's opinion, nor did he err in discounting a consultative physician's opinion.  Substantial evidence supports the ALJ's RFC findings.

## IV.

The ALJ did not err in finding that Asberry did not meet or equal a listing regarding her carpal tunnel syndrome, nor did the ALJ err in finding Asberry not fully credible.  In addition, the ALJ properly weighed the medical evidence of record.  As noted above, substantial evidence supports his decision.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Christie L. Asberry's Motion for Summary Judgment [Record No. 8] is **DENIED**.

2.      Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 9]

is **GRANTED**.

3.      The administrative decision of Administrative Law Judge Roger L. Reynolds will

be **AFFIRMED** by separate judgment entered this date.

This 22nd day of October, 2013.

Signed By:

_Danny C. Reeves_   DCR

United States District Judge